IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| CATHERINE DENISE STEWART, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. 9:21-CV-104-MAC |
| | § |
| COMMISSIONER OF SOCIAL SECURITY | § |
| | § |
| Defendant. | § |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

The Plaintiff, Catherine Denise Stewart ("Stewart"), requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to her application for disability-based benefits. This action is before the undersigned magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1] The undersigned finds that the administrative law judge's decision lacks reversible error and is supported by substantial evidence, and therefore recommends affirming the decision denying benefits.

**I.   JUDICIAL REVIEW**

United States district courts may review decisions of the Commissioner of the Social Security Administration. 42 U.S.C. § 405(g) (2020). The scope of judicial review is limited, however, to determining whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir.

---

[1] General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social Security Administration to magistrate judges serving the divisions where the cases are filed. *See also* 28 U.S.C. § 636(b)(1)(B) (2009) and E.D. TEX. CIV. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

1

1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). When the Commissioner applies proper law and the decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *Leggett*, 67 F.3d at 564. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Anthony*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

When the Commissioner fails to apply correct principles of law, or when "substantial evidence"[2] does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. § 405(g). Thus, courts have power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure

---

[2] "Substantial evidence" is a term of art meaning "more than a mere scintilla." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Anthony v. Sullivan*, 954 F.2d at 292. Evidence is "substantial" when it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Biestek,* 139 S. Ct. at 1154*; Richardson v. Perales*, 402 U.S. at 401; *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir. 1986).

deficiencies. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).

## II. BACKGROUND

A. Procedural History

Stewart applied for disability insurance benefits on December 13, 2018, due to impairments that allegedly became disabling on April 27, 2016. (Tr. 29, 177-178.) Following the denial of her claim, she requested a hearing before an administrative law judge which was held on January 14, 2020. (Tr. 48-77.) After that hearing, on February 5, 2020, Administrative Law Judge David R. Helget ("ALJ Helget") denied Stewart's request for benefits. (Tr. 29-43.) Stewart requested review of the ALJ's decision by the Appeals Council, which was denied on February 23, 2021, resulting in this appeal. (Tr. 1-3.)

B. Factual History

Stewart was 42 years old on the date last insured with a limited education and past work experience as a department manager and sandwich maker. (Tr. 40.)

C. Administrative Decision and Appeal

ALJ Helget utilized the five-step sequential analysis model specified by regulations and approved by courts in reaching his decision denying Stewart's application.[3] At step one, ALJ

---

[3] Pursuant to 20 C.F.R. § 404.1520(a)-(f), the five steps are generally as follows:
 1. The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*. (If so, a finding of non-disability is entered, and the inquiry ends.)
 2. The Commissioner determines *whether an applicant has a severe impairment or combination of impairments.* (If not, the inquiry ends, and a finding of non-disability is entered.)
 3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings"). (If so, disability is presumed, and benefits are awarded. If not, the analysis continues.)
 4. The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment*. (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner. *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).
 5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform*. (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).

Helget found that Stewart has not engaged in substantial gainful activity since her amended alleged onset date of April 27, 2016. (Tr. 32.) At step two, he found that Stewart has the following severe impairments: obesity, degenerative disc disorder of the lumber spine and residual effects post-fusion and laminectomy, diabetes mellitus, degenerative joint disease/labrum tear of the left shoulder, chronic pain, major depression, and anxiety. (Tr. 32.) At step three, ALJ Helget found that these impairments do not meet or medically qualify under the criteria of any listed impairment in the regulations at 20 C.F.R. pt. 404, subpt. P, app 1 (Listed Impairments) for presumptive disability. (Tr. 32-35.)

At step four, ALJ Helget determined that Stewart retained the physical residual functional capacity (RFC) to perform light work with the following exceptions: occasionally climb ramps, stairs, ropes, ladders or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally overhead reach with the left upper extremity; no work at unprotected heights or around dangerous moving machinery or hazards; able to understand, remember, and carryout detailed, but not complex instructions; and no fast paced production environment. (Tr. 35-40.) Ultimately, ALJ Helget found Stewart was not able to perform past relevant work at step four. (Tr. 40-41.) At step five, ALJ Helget, relying on vocational expert ("VE") testimony, found that Stewart was not disabled because she was able to perform other work that existed in significant numbers in the national economy, such as the light, unskilled jobs of mail clerk, officer helper, and cashier. (Tr. 41-42.)

### III. POINTS OF ERROR

Stewart argues that ALJ Helget failed to properly consider certain evidence in making his RFC determination, so it lacks the support of substantial evidence and/or contains legal error. The Defendant responds that ALJ Helget properly considered the evidence in the record, and his

RFC assessment is supported by substantial evidence and free from legal error.

## IV. DISCUSSION AND ANALYSIS

### A. Residual Functional Capacity ("RFC")

The regulations state that RFC means "the most you can still do despite your limitations." 20 C.F.R. § 416.945 (2012). Thus, when making an RFC determination, the ALJ decides whether an applicant retains the physical and mental abilities necessary to perform activities generally required by competitive, remunerative work. *See id.*; SSR 96-8p, 1996 WL 374184 (July 2, 1996). The RFC involves three components: physical abilities, mental abilities, and other abilities affected by impairments. 20 C.F.R. § 416.945(b)-(d).

A person's RFC is assessed at steps four and five of the sequential evaluation process. At that point, the person has demonstrated an impairment of a magnitude sufficient to significantly limit the ability to do basic work activities (step two), but not so severe as to match listed impairments (step three) from which disability is presumed. Thus, the Commissioner must determine whether, despite the presence of severe impairments, the person retains functional capacity to perform past relevant work (step four), and, if not, any available alternative work (step five). SSR 96-8p, 1996 WL 374184 (July 2, 1996). An ALJ's assessment of a person's RFC forms the basis of a hypothetical question to which a vocational expert may respond with an opinion as to whether there is alternative available work that a person with the applicant's impairments and functional limitations can perform. *See Frazier v. Colvin*, No. A-11-CA-901-SS, 2013 WL 12393909, at *5 (W.D. Tex. Aug. 30, 2013).

In assessing an applicant's physical, mental, and sensory abilities, the regulation directs an ALJ to consider the claimant's exertional and non-exertional capacity. Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the

individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.  SSR 96-8p, 1996 WL 374184 (July 2, 1996). Non-exertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength, *i.e.*, all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions, including an individual's abilities to perform physical activities such as postural (*e.g.*, stooping, climbing), manipulative (*e.g.*, reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (*e.g.*, understanding and remembering instructions and responding appropriately to supervision).  *Id.*  In addition to these activities, the ability to tolerate various environmental factors (*e.g.*, tolerance of temperature extremes) is also a non-exertional capacity consideration. *Id.*

In the present action, the ALJ concluded that Stewart can perform light work with the following exceptions: occasionally climb ramps, stairs, ropes, ladders or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally overhead reach with the left upper extremity; no work at unprotected heights or around dangerous moving machinery or hazards; able to understand, remember, and carryout detailed, but not complex instructions; and no fast paced production environment.  (Tr. 35-40.)

Stewart argues that the ALJ's RFC finding is unsupported by substantial evidence because it conflicts with her limitations in walking and standing, as well as her ability to reach in all directions with both shoulders.  (Doc. #18, at 10-14.)  The Defendant asserts that ALJ Helget properly relied on substantial evidence in making his RFC assessment, including the objective medical evidence, her subjective complaints, and the medical opinion evidence.  (Doc. #20, at 7-13.)

6

1. *Walking and Standing Limitations*

Stewart argues that her spine impairments, stress incontinence, pain and obesity should be accommodated for with regard to her ability to walk and stand in the RFC. (Doc. #18, at 7.) She asserts that she fell from a ladder in 2012 fracturing her back causing her back pain since then. (*Id.*) In addition, she complains of stress incontinence[4] when lifting more than five pounds and the effect of her obesity on her back impairments. (Doc. #18, at 8-9.)

ALJ Helget limited Stewart to light work, which "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567. ALJ Helget explained that the records show that Stewart only sought sporadic medical treatment over the disability period. (Tr. 38.) In addition, she was able to ambulate without an assistive device and did not take any prescription pain medication. (*Id.*) He also noted that her imaging reflected mild to moderate back and shoulder impairments. (*Id.*) Moreover, she had several normal physical examinations that also showed a normal gait. (*Id.*) ALJ Helget also pointed to Stewart's daily activities, including taking care of herself and hygiene, performing chores, cooking, shopping, driving, spending time with friends, and crafting. (Tr. 38-39.) Further, he noted that Stewart admitted that she could answer phones and sit at a desk for at least three hours a day. (Tr. 39.)

Although prior to her onset date, Stewart's treatment records with Dr. Frederick Kersh, D.O. between 2013-2015 indicate that she was "fit for work" with light duty restrictions. (Tr. 537, 545, 823, 826, 829, 835, 844, 856, 859.) In addition, Stewart showed earnings of $660 in 2017 and $1,975 in 2019 indicating she could do some work, although it did not rise to the level

---

[4] As noted by the Defendant, Stewart's incontinence presents as a somewhat isolated subjective complaint without any objective support given her negative test results and repeated normal exams denying the same problem. (Doc. #20, at 11) (citing Tr. 680, 685, 690, 693, 710, 731, 735, 770, 790, 905, 907, 909, 911, 914, 916, 918, 920, 922, 928, 930, 932.)

of substantial gainful activity. (Tr. 32.) This is relevant considering Stewart's arguments that her medical evidence prior to her onset date should be considered and cites to her treatment records beginning in 2012 through 2017. (Doc. #18, at 7-9.) Stewart quotes Dr. Robert Panzarella, a worker's compensation doctor, as to her spine decreased range of motion and slow gait in August 2015; however, Dr. Panzarella also stated that Stewart could return to work without restrictions during that time. (Tr. 624, 815.) Dr. Panzarella noted that she had a totally normal spine examination other than some minor decreased range of motion and she is willing to go back to work at full duty at any capacity. (Tr. 624.) As noted by the Defendant, an ability to work despite a preexisting condition supports a finding of no disability. *See Fraga v. Bowen,* 810 F.2d 1296, 1305 n.11 (5th Cir. 1987). To Stewart's favor, ALJ Helget found these medical opinions unpersuasive and instead assessed greater restrictions for her RFC given their remote nature. (Tr. 40.)

Moreover, ALJ Helget relied upon the state agency medical consultant Dr. Laurance Ligon, M.D.'s opinion that Stewart could perform work at the light level with standing/walking for six hours in an eight-hour workday and limited left overhead reaching. (Tr. 97-99.) ALJ Helget deemed this opinion persuasive finding it balanced, objective, and consistent with the record as a whole. (Tr. 39.) Dr. Ligon made his evaluation towards the end of Stewart's disability period on May 3, 2019. (Tr. 97-99.)

ALJ Helget also considered the opinion of Dr. Leigh McCary, M.D., another state agency medical consultant. (Tr. 39, 84-86.) Dr. McCary evaluated Stewart's medical records on January 12, 2019, and found that she could perform work at the medium level with limited left overhead reaching. (*Id.*) The medium level includes standing/walking for a total of six hours in an eight-hour workday. (Tr. 84.) To Stewart's favor, ALJ Helget found that she was more

limited than this opinion (instead giving her a light work classification), so he deemed it unpersuasive, but it nevertheless weighs in favor of the ALJ's findings regarding walking and standing because the requirement of six hours in an eight-hour workday is the same for light and medium level jobs. *See* SSR 83-10, 1983 WL 31251 (1983).

Further, ALJ Helget relied upon objective medical evidence in this case, including Stewart's CT scan results, which showed that she had healed compression fractures, some degenerative disc disease, but no acute fractures, herniation, or spinal stenosis. (Tr. 36, 924.) He also pointed out her treatment records and examinations that indicated she had a normal gait and could ambulate effectively throughout her disability period. (Tr. 639, 685, 710, 763, 906-933.)

### 2. *Shoulder/Reaching Limitations*

With regard to her shoulder/reaching limitation, ALJ Helget took into consideration much of the same evidence discussed above, as well as specific evidence as to Stewart's shoulder impairment and accordingly limited her to only occasional reaching overhead with her left arm. In support of this finding, he relied on the opinion of Dr. Ligon, who limited Stewart to occasional reaching. While ALJ Helget found Dr. McCarey's opinion unpersuasive for other reasons, he also assessed Stewart with limited occasional left overhead reaching. (Tr. 39.) Further, ALJ Helget noted that although the medical evidence shows that Stewart has a decreased range of motion in the left shoulder, she had normal muscle strength and no abnormal movements, so the limitation given in the RFC properly compensated for this lack of range of motion. (Tr. 39.) He also discussed her MRIs in 2016 and 2018 which showed a tear on left shoulder with adhesive capsulitis.[5] (Tr. 36-38.) He stated that her imaging reflects a mild to moderate shoulder

---

[5] Stewart argues that ALJ Helget failed to find that she suffers from adhesive capsulitis or that the condition is severe; however, ALJ Helget explicitly mentions this diagnosis in his decision and her severe impairment of degenerative joint disease/labrum tear of the left shoulder encompasses this diagnosis. (Tr. 32, 37.)

impairment. (Tr. 38.)

### 3. *ALJ Helget's RFC is supported by substantial evidence.*

It was within ALJ Helget's discretion to determine the credibility of the various medical reports in the record. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). It is also ALJ Helget's job to craft the RFC based on all the relevant medical and other evidence. 20 C.F.R. §§ 404.1545, 404.1546; *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). The RFC is an administrative finding of fact, and the ALJ, not a medical source, is responsible for this assessment. *Taylor*, 706 F.3d at 602-03 (ALJ has the "sole responsibility" to assess the RFC and what the claimant "characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work"). ALJ Helget evaluated the record as a whole and rendered a decision that reconciles conflicting medical evidence.

The social security regulations explain that the ALJ is the fact-finder in making the RFC assessment, and the ALJ is not required to adopt the RFC verbatim from a medical opinion, as this would nullify his role as fact-finder. *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) ("Though the ALJ neither adopted the state agency report verbatim nor accepted the testimony of Dr. Small, it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards."); *Pete v. Comm'r Soc. Sec. Admin.*, No. 6:18-CV-01239, 2020 WL 1492727, at *6 (W.D. La. Feb. 24, 2020), *R. & R. adopted*, 2020 WL 1492705 (W.D. La. Mar. 23, 2020) (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016)). "[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

The court in *Grennan*, also addressed this same issue and explained that "the law only

requires an 'accurate and logical bridge' within the ALJ's RFC explanation." *Grennan v. Comm'r of Soc. Sec.*, No. 4:21-CV-00645-O-BP, 2022 WL 2056277, at *4 (N.D. Tex. May 23, 2022), *R. & R. adopted*, 2022 WL 2053168 (N.D. Tex. June 7, 2022) (citing *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)). Further the court noted that "word-for-word recitations are not required so long as the explanation permits meaningful judicial review." *Id.*; *see also Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008) (requiring the ALJ to incorporate only those limitations she finds "consistent with the weight of the evidence as a whole").

ALJ Helget's explanation here provides such an "accurate and logical bridge" between the evidence considered and the conclusions reached. In conclusion, the ALJ properly considered the medical opinions, and his RFC determination was properly based upon the medical evidence in the record, so his RFC determination is supported by substantial evidence.

## V. RECOMMENDATION

ALJ Helget's application of the sequential analysis is free from legal error and supported by substantial evidence for the reasons discussed in the preceding sections. Consequently, the administrative decision should be affirmed.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1)

(2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 27th day of February, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE